# No. 25-50093

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## DENNIS B. ROBERSON

*Plaintiff-Appellant,*

v.

## ERIC DEANDA; ISHMAEL FLORES; PATRICK GILLIS; DONALD ALSBROOKS

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS (MIDLAND-ODESSA), 7:23-CV-145

## BRIEF OF APPELLEES

R. LAYNE ROUSE
Texas Bar No. 24066007
lrouse@shaferfirm.com
SHAFER, DAVIS, O'LEARY & STOKER, P. C.
700 N. Grant, Suite 201
Odessa, Texas 79761
COUNSEL FOR APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Appellees certifies that the following listed persons as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Dennis Roberson | Nathaniel Mack of Law Offices of Nathaniel Mack III, P.L.L.C. San Antonio, TX |
| | Harry Daniels of Law Offices of Harry M. Daniels Atlanta, GA |

| **Appellees** | **Counsel for Appellees** |
|---|---|
| Donald Alsbrooks<br>Eric DeAnda<br>Ishmael Flores<br>Patrick Gillis | Shafer, Davis, O'Leary & Stoker, PC<br>R. Layne Rouse |

/s/ R. Layne Rouse
R. LAYNE ROUSE
*Counsel of Record for Appellees*

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is unlikely to aid the Court in its decisional process as Appellant's arguments have been foreclosed by Fifth Circuit precedent.  If the Court concludes that oral argument is warranted, however, Appellees respectfully reserve their right to participate.

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................................. ii

Statement Regarding Oral Argument ........................................................ iii

Table of Contents ................................................................................. iv-v

Table of Authorities ............................................................................. vi-ix

Introduction ............................................................................................. 1

Statement of Jurisdiction ........................................................................ 2

Issues Presented ...................................................................................... 2

Statement of the Case .............................................................................. 3

    I.    Appellant's Factual Allegations ............................................. 3

        1.  The officers had probable cause to arrest Appellant ...................... 4
        2.  Deputy Gillis and Deputy DeAnda used reasonable force ............. 6
        3.  Appellant continued to resist his arrest ........................................ 6
        4.  Medical confirmed Appellant sustained no "emergent" injuries ..... 8

    II.    Procedural Background .......................................................... 9

Summary of the Argument ...................................................................... 9

Standard of Review ................................................................................. 10

Arguments .............................................................................................. 12

    I.    The District Court Properly Dismissed Appellant's Wrongful
        Arrest Claims ......................................................................... 12

    II.    The District Court Appropriately Dismissed Appellant's
        Excessive Force Claims ......................................................... 17

III.    The District Court Correctly Dismissed the Bystander Claims ...................................................................................25

IV.    Appellant Abandoned His Remaining Claims ....................................26

Conclusion ...................................................................................................28

Certificate of Service ...................................................................................29

Certificate of Compliance ...........................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Akuna Matata Investments, Ltd. v. Texas Nom Ltd. Partnership*,
    814 F.3d 277 (5th Cir. 2016) ............................................................................27

*Alexander v. City of Round Rock*,
    854 F.3d 298 (5th Cir. 2017) .........................................................................22

*Amalgamated Transit Union v. New Orleans Reg'l Transit Auth.*,
    2023 WL 7013355 (5th Cir. Oct. 24, 2023) .................................................26

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................11

*Bailey v. Ramos*,
    125 F.4th 667 (5th Cir. 2025) .................................................................14, 15

*Betts v. Brennan*,
    22 F.4th 577 (5th Cir. 2022) .....................................................................11, 18

*Bey v. Prator*
    53 F.4th 854 (5th Cir. 2022) ..........................................................................11

*Britt v. Grocers Supply Co., Inc.*,
    978 F.2d 1441 (5th Cir. 1992) .......................................................................27

*Brown v. Callahan*,
    623 F.3d 249 (5th Cir. 2010) .........................................................................11

*Buchanan v. Gulfport Police Dep't*,
    530 Fed. Appx. 307 (5th Cir. 2013) ..............................................................20

*Buehler v. Dear*,
    27 F.4th 969 (5th Cir. 2022) ............................................................13, 19, 20

*Byrd v. Cornelius*,
    52 F.4th 265 (5th Cir. 2022) .........................................................................22

*Cadena v. Ray,*
    728 Fed. Appx. 293 (5th Cir. 2018) ........................................................19, 20

*Carnaby v. City of Houston,*
    636 F.3d 183 (5th Cir. 2011) ........................................................................11

*Cass v. City of Abilene,*
    814 F.3d 721 (5th Cir. 2016) ........................................................................25

*Crose v. Humana Ins. Co.,*
    823 F.3d 344 (5th Cir. 2016)........................................................................27

*Dallas Gas Partners, L.P. v. Prospect Energy Corp.,*
    733 F.3d 148 (5th Cir. 2013) ........................................................................26

*DeVille v. Marcantel,*
    567 F.3d 156 (5th Cir. 2009) ..................................................................18, 24

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018) ........................................................................................13

*Estevis v. Cantu,*
    134 F.4th 793 (5th Cir. 2025) .......................................................................25

*Freeman v. Gore,*
    483 F.3d 404 (5th Cir. 2017) ........................................................................14

*Graham v. Conner,*
    490 U.S. 386 (1989).........................................................................17, 18, 24

*Griffin v City of Sugarland, Tex.,*
    787 Fed. Appx. 244 (5th Cir. 2019)........................................................25, 26

*Grisham v. Valenciano,*
    93 F.4th 903 (5th Cir. 2024) .........................................................................13

*Guevara v. Ferrer,*
    247 S.W.3d 662 (Tex. 2007) .........................................................................23

*Hall v. Trochessett,*
    105 F.4th 335 (5th Cir. 2024) ........................................................15

*Hamburger v. State Farm Mut. Auto. Ins. Co.,*
    361 F.3d 875, 884 (5th Cir. 2004) ................................................23

*Joseph on behalf of Estate of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020)........................................................17

*Keenan v. Tejeda,*
    290 F.3d 252 (5th Cir. 2002)........................................................27

*Mace c. City of Palestine,*
    333 F.3d 621 (5th Cir. 2003)........................................................21

*Martinez v. Harris Cnty, Texas,*
    2025 WL 914309 (5th Cir. Mar. 26, 2025) .............................14, 15

*Poole v. City of Shreveport,*
    691 F.3d 624 (5th Cir. 2012)...................................................17, 20

*Ramirez v. Martinez,*
    716 F.3d 369 (5th Cir. 2013) ..................................................16, 20

*Reed v Neopost USA, Inc.,*
    701 F.3d 434 (5th Cir. 2012).........................................................11

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002) ............................22

*Ross v. Judson Indep. Sch. Dist.,*
    993 f.3d 315 (5th Cir. 2021) .........................................................27

*Sanders v. Christwood,*
    970 F.3d 558 (5th Cir. 2020).........................................................10

*Scott v. Harris,*
    550 U.S. 372 (2007).......................................................................11

*Silverman v. Ballantine,*
    694 F.2d 1091 (7th Cir. 1982)......................................................22

*Spiller v. Harris Cnty., Texas*,
   113 F.4th 573 (5th Cir. 2024) ................................................13, 15

*Taylor v. Collier,*
   2023 WL 8184869 (5th Cir. Nov. 27,2023)............................................ 26-27

*Tennyson v. Villarreal,*
   801 Fed. Appx. 295 (5th Cir. 2020) .................................................25

*United States v. Castro,*
   166 F.3d 728 (5th Cir. 1999)..........................................................11

*United States v. Whitfield,*
   590 F.3d 325 (5th Cir. 2009)..........................................................27

*Vann v. City of Southaven, Miss.,*
   884 F.3d 307 (5th Cir. 2018)..........................................................25

*Wells v. Red Banner Transp., LLC*,
   2023 WL 438802 (W.D. Tex. Jan. 26, 2023).................................................23

**Statutes**

28 U.S.C. § 1291 ..............................................................................2
42 U.S.C. § 1983 .........................................................................*passim*
F.R.C.P. 56(a) ...............................................................................10
Texas Penal Code § 38.03 .....................................................................16
Tex. Penal Code § 38.15 ..................................................................13, 14

# INTRODUCTION

This appeal arises out of the district court's order granting Appellees' motion for summary judgment. Appellant Dennis B. Roberson ("Appellant") claims that Eric DeAnda, Ishmael Flores, Patrick Gillis, and Donald Alsbrooks, all officers with the Ector County, Texas, Sheriff's Office (collectively, "Appellees"), wrongfully arrested and used excessive force against Appellant. Appellees moved to dismiss all claims based on the video recordings of the arrest, and the district court granted Appellees relief based on such video recordings.

The district court correctly dismissed Appellant's claims. The video recordings show that Appellant interrupted the officers' questioning of a suspect to a reported crime, then refused to follow the officers' verbal commands to step away, and when the officers attempted to put Appellant in handcuffs to enforce their orders, Appellant pulled away from the officers. The video recordings establish that Appellees used measured and ascending responses to Appellant's increasing resistance to the officers, and the officers never resorted to using any weapons, striking Appellant, or taking him to the ground.

By dismissing Appellant's claims, the district court faithfully applied controlling Fifth Circuit precedent, precedent which this Court has further reinforced since the district court issued its opinion. This Court should affirm the district court's judgment.

## STATEMENT OF JURISDICTION

Appellant asserted claims arising under the Constitution and laws of the United States, specifically, claims asserted under 42 U.S.C. § 1983. (ROA.7,19-24). Appellant timely appealed the district court's judgment after the district court dismissed all of Appellant's claims. (ROA.4,145-146). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

As stated by Appellant, the issues presented in this appeal are as follows:

1.     Did the district court correctly dismiss Appellant's wrongful arrest claims?

2.     Did the district court correctly dismiss Appellant's excessive force claims based on the video recordings?

3.     Did the district court correctly dismiss the bystander claims after dismissing all underlying claims?

4.     Did Appellant waive or abandon his remaining claims by failing to brief them on appeal or raise his arguments before the district court?

# STATEMENT OF THE CASE

## I.    Appellant's Factual Allegations

On October 3, 2021, the Ector County Sheriff's Office received a call from a complainant reporting a possible intoxicated or reckless driver in a red Chevrolet pickup that exited his vehicle and started swinging a bat.  Appellees responded to the complaint.

Deputy Ishmael Flores was the first to arrive at the scene.  (ROA.99-100) (Flores's report).  He observed two subjects later identified as Joe Alton Redic ("Redic") and Appellant.  Officer Flores asked Redic and Appellant who was driving the red vehicle that was the subject of the complaint.  Redic identified himself as the driver.  Officer Flores initially requested Redic to approach Flores for questioning (that is, to move way from Appellant).  Redic was sitting down and requested Officer Flores to come to him instead.  (ROA.99-100) (Flores's report).  As Officer Flores approached Redic, Appellant demanded that Officer Flores get off his property.  Officer Flores advised Appellant that he had a reason to be on the property, and that he needed to speak with Redic.  (*See generally* ROA.98-105) (the officers' reports).  According to the officers' reports, Appellant began acting belligerent and interfering with the officer's investigation, prompting Deputy Patrick Gillis and Deputy Eric DeAnda to intervene and attempt to control Appellant.  *See generally* (ROA.98-105) (officers' reports).

Deputy Gillis and Deputy DeAnda ordered Appellant to stop interfering and step away from the investigation.  Appellant refused.  When Appellant began walking into an unsecured building, Gillis and DeAnda detained Appellant, and Appellant began to physically resist the officers.  The officers eventually placed Appellant against the wooden rail on the porch to gain control of him and secure him in handcuffs.  As Gillis and DeAnda walked Appellant off the porch, Appellant continued to resist the arrest and attempted to pull away from the deputies, resulting in the deputies placing Appellant against the hood of a vehicle.  *See* (ROA.98-105). No more than minimal force was used to control Appellant.

### 1.    *The officers had probable cause to arrest Appellant.*

The video recordings confirm that Gillis and DeAnda had probable cause to arrest Appellant.  At the start of the video recordings, Appellant can be heard yelling at Deputy Flores to "get off my property."  (ROA.106) (DeAnda video, about 1:29 mark); (ROA.107) (Gillis video, about 1:19 mark); (ROA.109) (Flores video, from start).  In response, Deputy Flores told Appellant "I suggest you go over there," pointing to the camera-right side of the house.  *See* (ROA.109) (about 0:21 mark). Deputy Gillis, who was standing on the camera-right side of the house, asked Appellant to "come over here."  (ROA.106) (about 1:37 mark); (ROA.107) (about 1:25 mark); (ROA.109) (about 0:21 mark).  Appellant did not comply with either request but instead stepped back onto his porch.  (ROA.109) (about 0:21 mark);

(ROA.106) (about 1:38 mark) (*see also* ROA.77) (pictures from video depicting Appellant's actions).

Despite Appellant's non-compliance, Deputy Flores continued with the investigation, and deputies DeAnda and Gillis continued to engage Appellant, attempting to control him. Deputy Gillis warned Appellant that "You're about to get in handcuffs," to which Appellant responded "So? Not the first time." (ROA.107) (about 1:54 mark). Deputy Gillis responded "There's no reason for it. All you got to do is listen man." (ROA.107) (same). Appellant then addressed Sergeant Donald Alsbrooks and interrupted Deputy Flores's investigation by asking Deputy Flores "What are you checking on?" in response to Flores's question to Redic. (ROA.106) (about 2:19 mark); (ROA.107) (about 2:10 mark); (ROA.109) (about 1:04 mark). In response to this interference, Flores raised his voice and sternly warned Appellant "I'm not talking to you." (ROA.109) (about 1:04 mark). Gillis responded by stepping directly in front of Appellant and directing him to step to the side of the house and away from the investigation. (ROA.106) (about 2:19 mark).

Gillis told Appellant "Over here or you're going to get put in handcuffs. Last time I'm going to tell you." (ROA.106) (about 2:22 mark); (ROA.107) (about 2:15 mark) (ROA.78) (picture of interaction from video recording). Appellant did not respond but stared down Gillis without moving. After about a fifteen second

standoff, Appellant turned, scooped down to grab his phone, and began heading into the building.  (ROA.106) (about 2:25 to 2:42 mark).

### 2. *Deputy Gillis and Deputy DeAnda used reasonable force.*

As Appellant turned to the house, Gillis said "Hey" and attempted to grab Appellant by the arm.  Appellant immediately, and violently, yanked his arm away from Gillis, as depicted in the video recordings.  (ROA.106) (about 2:42 mark). Gillis then grabbed Appellant by two hands and attempted to put Appellant's arms behind his back.  (ROA.106) (about 2:45 mark); (ROA.108) (Alsbrook video, about 2:43 mark).  Appellant continued to resist.  After a few seconds, Gillis turned Appellant's body towards the porch railing.  (ROA.108) (about 2:40 to 3:04 mark). DeAnda and Gillis then leaned and pushed Appellant against the porch railing where they could secure him in handcuffs.  (ROA.108) (about 2:40 to 3:04 mark) (ROA.79-80) (pictures from video recordings).  DeAnda and Gillis never used any weapons against Appellant.  They never struck Appellant.  They did not take Appellant to the ground.  They only used such force as needed to control Appellant, i.e., one quick movement to turn Appellant towards the porch railing and then place him on the railing.  Once the officers gained control of Appellant, they ceased using force.

### 3. *Appellant continued to resist his arrest.*

Despite being placed in handcuffs, Appellant continued to resist his arrest. Gillis's body camera popped off and fell to the ground while he attempted to place

Appellant in handcuffs. (ROA.107) (about 2:30 to 3:10 mark). After reaffixing his camera, Gillis walked over to DeAnda and Appellant. Despite Appellant's complaint regarding the force used, the force was not so extreme to cause Appellant to lose his grip on his phone, as depicted by the video recordings. (ROA.107) (about 3:15 mark) (ROA.80) (pictures showing Appellant holding his phone). The video recordings confirm Appellant not only maintained possession of his phone, but that he attempted to use the phone during his arrest. When DeAnda attempted to remove the phone from Appellant's hand, Appellant again resisted, holding tightly onto the phone, and forcing DeAnda to forcefully pry the phone out of Appellant's hands. (ROA.107) (about 3:20 mark) (ROA.81) (pictures of interaction). Appellant then began to push against DeAnda. This forced DeAnda to use two hands to control Appellant and prompted Gillis to grab Appellant by the arm and tell him to stop pushing back. (ROA.107) (about 3:30 mark). Sergeant Alsbrooks attempted to calm Appellant, but Appellant refused to listen. (ROA.108) (Alsbrooks' video recording) (about 3:40 mark). Instead, Appellant insisted that he needed medical attention. (ROA.108) (about 3:39 mark).

Redic's recorded response to Appellant's behavior indicates that Redic believed Appellant was in the wrong. Redic confirmed that he had worked with and/or known Appellant for years. *See* (ROA.108) (about 10:00 and 14:00 marks). When Appellant walked away from the officers and resisted the arrest, Redic called

out to Appellant, saying "Dennis … Dennis." (ROA.109) (about 1:31 mark). After the arrest Deputy Flores and Redic discussed Appellant's behavior. Deputy Flores explained that unlike Appellant, Redic remained "cool". (ROA.109) (about 2:35 mark). Redic exclaimed "I don't know why he [Appellant] did that," while Deputy Flores explained that Appellant was put in handcuffs because of his behavior. (ROA.109) (about 2:45 mark). As deputies DeAnda and Gillis escorted Appellant away from the scene, Redic appeared to shake his head at Appellant. (ROA.109) (about 6:16 mark).

In contrast to Appellant, Redic provided no resistance to being temporarily placed in handcuffs while Deputy Flores investigated an outstanding warrant for Redic's arrest. (ROA.109) (about 5:30 mark). Redic's behavior demonstrates that the problem was not with the officers, but with Appellant.

### 4.    *Medical confirmed Appellant sustained no "emergent" injuries.*

Per Appellant's request, Sergeant Alsbrooks requested EMS to the scene. (ROA.108) (Alsbrooks' video recording) (about 5:45 mark). Deputies DeAnda and Gillis then escorted Appellant to the back of a patrol car while they awaited medical to arrive at the scene. (*See, e.g.*, ROA 107) (beginning about 7:10). Once Appellant climbed inside the vehicle, Appellant looked directly at the patrol car camera and stated that the officers injured his back. (ROA.110) (patrol car video, about 9:40 mark). Medical responders arrived and checked on Appellant for any injuries. While

the paramedics identified Appellant's preexisting back issues, they also confirmed Appellant did not suffer from a readily identifiable traumatic injury, stating to Deputy DeAnda "he's [Appellant] definitely not emergent."  (ROA.106) (about 17:40 mark); (ROA.110) (about 18:00 mark).  Based on the officers' reports, the paramedics noted Appellant's blood pressure levels were elevated, and medical transported Appellant to the Medical Center Hospital for high blood pressure at Appellant's request.  (ROA.98-105).

## II.    Procedural Background

Appellant filed his complaint on September 15, 2023. (ROA.7-8,52-55). Appellees filed their original answer on November 21, 2023.  (ROA.60-68).  On April 1, 2024, Appellees timely filed a motion for summary judgment based on the video recordings of Appellant's arrest.  (ROA.7-8).  On January 10, 2025, the district court entered its order and final judgment dismissing Appellant's claims.  (ROA.7-8).  Appellant filed his notice of appeal on February 8, 2025 (ROA.145-46).

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's judgment dismissing Appellant's claims.  The district court properly dismissed Appellant's wrongful arrest claims. The video recordings demonstrate that Appellant interrupted Deputy Flores's questioning of a suspect and refused to follow multiple verbal commands to stop interfering and move aside.  When the officers attempted to enforce their verbal

commands by placing Appellant in handcuffs, Appellant resisted by pulling away from the officers.  In similar cases, this Court has held the arrest did not violate the arrestee's rights.

As to Appellant's excessive force claims, the video recordings confirm that the officers used only measured, ascending levels of force in response to Appellant's increasing resistance to the officers' attempts to control Appellant.  Importantly, Appellant failed to identify a case demonstrating that Appellant's claim could survive the Appellees' qualified immunity challenge.  The district court appropriately dismissed these claims.

Appellant's derivative, bystander claims cannot survive because his underlying claims for wrongful arrest and excessive force were properly dismissed, and Appellant waived his arguments to his remaining claims.  The Court should affirm the district court's judgment in its entirety.

## STANDARD OF REVIEW

This Court conducts a *de novo* review of a district court's grant of summary judgment.  *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020).  "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (citing Fed. R. Civ. P. 56(a)).  However, "[a] qualified immunity defense alters the usual summary judgment burden of proof" because, to overcome qualified immunity,

Appellant "must rebut the defense by establishing a genuine [dispute of material fact] as to whether the official's allegedly wrongful conduct violated clearly established law." *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022) (per curiam) (quoting *Brown v. Callahan*, 623 F. 3d 249, 253 (5th Cir. 2010)) (alteration in original).

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted). Although the Court views the evidence favorably to the nonmovant, the Court "assign[s] greater weight, even at the summary judgment stage, to the video recording taken at the scene." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (internal punctuation omitted) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("The Court of Appeals should not have relied on [the respondent's version of events]; it should have viewed the facts in the light depicted by the videotape."). "[T]he ultimate determination of whether there is probable cause for the arrest is a question of law [this Court] review[s] *de novo*." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc).

## ARGUMENTS

### I.    The District Court Properly Dismissed Appellant's Wrongful Arrest Claims.

The district court properly dismissed Appellant's wrongful arrest claims. Deputies DeAnda and Gillis appropriately arrested Appellant for interference with public duties, and the video recordings confirm they were also justified in arresting Appellant for resisting his arrest. At a minimum, the officers are entitled to qualified immunity.

As the video recordings show, Deputy Flores was interviewing a suspect regarding a reckless driving complaint when Appellant began interrupting Deputy Flores. After receiving multiple warnings, Appellant continued to interrupt Deputy Flores's investigation, questioning Deputy Flores's authority by asking why the officer needed the requested information. When Deputy Gillis ordered Appellant to step aside and allow Deputy Flores to continue his investigation, Appellant refused, resulting in a lengthy stare down between Appellant and Deputy Gillis. Gillis warned Appellant to step aside or be subject to arrest. Instead of complying, Appellant turned his back to Gillis to go into an unsecured building.

Based on the above facts, Gillis and DeAnda had probable cause to arrest Appellant for interference with public duties. The Texas Penal Code makes it a misdemeanor if a person "interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising

authority imposed or granted by law . . . ." Tex. Penal Code § 38.15(a)(1).  Appellant interrupted and disrupted Flores's questioning of a suspect.  Gillis and DeAnda attempted to control Appellant verbally by asking him to step aside, commands Appellant refused.  As shown in the video recordings, when Appellant began resisting his arrest, Flores had to temporarily cease his investigation to ensure his fellow officers did not lose control of the situation.

"Whether probable cause exists is based on what an objectively reasonable officer would perceive under the totality of circumstances." *Grisham v. Valenciano*, 93 F.4th 903, 910 (5th Cir. 2024).  This concerns "whether a reasonable officer ***could*** conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a substantial chance of criminal activity." *Id.* (emphasis added) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).  As applied here "refusing to obey police officers' repeated and unambiguous warnings to step back [or step aside] so as not to interfere with officers' official duties establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1)." *Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022).  The officers had probable cause to arrest Appellant, which the district court correctly found. (ROA.140n.30) (citing *Buehler*, 27 F.4th at 992 and *Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 579 (5th Cir. 2024).

Appellant erroneously analogizes his case to *Freeman v. Gore*, claiming one does not interfere with an investigation by "merely arguing with police officers." (Appellant's Br.13) (citing *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2017). Appellant, however, did much more than "argue" with the officers. He actively interrupted an officer's questioning of a suspect, ignored multiple officer directives to move away from the scene, and then physically resisted the officers' attempts to move him to the side. "Texas courts have found that failure to comply with an officer's instructions violates Texas Penal Code § 38.15 and is not protected speech." *Martinez v. Harris Cnty., Tex.*, No. 24-20194, 2025 WL 914309, at *5 (5th Cir. Mar. 26, 2025) (quoting *Bailey v. Ramos*, 125 F.4th 667, 677-78 (5th Cir. 2025)). Similarly, the district court noted that "[w]hile speech alone is carved out" from Texas Penal Code § 38.15, as noted in *Freeman v. Gore*, the "failure to obey an officer's instructions to step back or move away [is] not." (ROA.140n.30). As correctly found by the district court, this case is not analogous to *Freeman v Gore*. (*See also* ROA.128-30).

Appellant claims that he was free to leave whenever he wanted because he was not the subject of the investigation, characterizing his interaction with the officers as a wrongful "Terry stop." (Appellant's Br. 17). While it is true Appellant was not the subject of the officers' investigation, Appellant inserted himself into the investigation by interrupting the officers' questioning of Redic. The officers'

interaction with Appellant was not based on a "Terry stop" but based on Appellant interfering with an ongoing investigation.

Notably absent from Appellant's brief is *any* discussion of this Court's controlling authorities relied upon by the district court. Those authorities directly refute Appellant's claims. For example, in *Bailey v. Ramos*, this Court held that one's failure to follow an officer's commands to move away from a crime scene justifies an arrest under Texas Penal Code § 38.15. *See Bailey*, 125 F.4th at 676; *see also Martinez*, No. 24-20194, 2025 WL 914309, at *5 (holding a failure to follow an officer's directives to identify oneself during an investigation supports an arrest under Texas Penal Code § 38.15). Similarly, this Court held that officers were justified in seizing a bystander attempting to answer questions for a suspect during an investigation (like Appellant did here). *See Spiller*, 113 F.4th at 579. This Court also upheld an arrest of one disobeying an officer's order by turning to go inside her property (again, like Appellant did here). *See Hall v. Trochessett*, 105 F.4th 335, 343–44 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1173, 221 L. Ed. 2d 255 (2025). Like these other arrestees, the video recordings confirm that Appellant *disobeyed* direct orders to step away from an ongoing investigation. As the district court appropriately noted:

> In the end, Roberson does not dispute that he was asked—and refused—to step away from the investigation of his employee, Mr. Redic. Nor can he, given that the entire incident is available as video evidence in the summary judgment record. He likewise makes no

15

attempt to rebut, under these facts, that "a reasonable officer could think [Roberson] was interfering with the investigation by refusing to leave while the investigation was being completed."

(ROA.140&n.30,31) (citing cases).

Appellant not only interfered with the investigation, but Appellant also resisted his arrest. The video recordings establish that Appellant yanked his arms away from the officers in an aggressive fashion and began physically resisting the officers when they attempted to place him in handcuffs. At this point Appellant was not only interfering with an ongoing investigation, but he was resisting his arrest in violation of Texas Penal Code § 38.03. *See Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (finding that police officer had probable cause to arrest plaintiff for resisting arrest, noting "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." (citing cases)). Hence, whether based on Appellant's interference with an investigation or his resistance to his arrest, the video recordings confirm the officers had probable cause to arrest Appellant.

As the district court found, a reasonable officer could have believed Appellant was interrupting the investigation and resisting arrest. Appellees were justified in arresting Appellant, and the district court appropriately dismissed Appellant's claim. This Court should affirm.

## II.     The District Court Appropriately Dismissed Appellant's Excessive Force Claims.

The district court properly dismissed Appellant's excessive force claims.  The video recordings refute Appellant's claim of excessive use of force.  Specifically, the video recordings demonstrate that the officers used measured, ascending levels of force in response to Appellant's increasing resistance, confirming the force used was reasonable.

A violation of the Fourth Amendment right to be free from excessive force occurs when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force.  *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).  "Excessive force claims are thus necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (internal citation, quotations, and alterations omitted).  The test for reasonableness is "not capable of precise definition or mechanical application" but courts consider several factors including: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

While Appellant agrees that the *Graham* factors apply, he ignores how this Court weighs the factors. "Of the *Graham* factors, the extent of [Appellant's] resistance is the most important to analyzing [the officers' actions]. The other two factors—the 'severity of the crime at issue' and the 'immediate threat to the safety of the officers or others'—are less salient." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Graham*, 490 U.S. at 396). Courts also note whether the arrestee "passively" resisted the officers, for example, by merely passively ignoring a command, or "actively" resisted the officers, such as by responding to commands with "physical resistance." *See Id.* at 582, 585 (noting that "the line between active and passive resistance is sometimes hazy and must be judged in light of the 'necessarily fact-intensive' nature of the inquiry") (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). Finally, the "vantage point" of applying the factors is "the perspective of a reasonable officer on the scene, rather than . . . the 20/20 vision of hindsight." *Id.* at 582 (quoting *Graham*, 490 U.S. at 396).

As noted by the video recordings, Appellant's resistance is apparent. Appellant refused to obey *multiple* verbal commands to step aside (off the porch and to the side of the house). Appellant stared down Officer Gillis in response to the direct command to step aside or be placed in handcuffs. Even so, Deputy Gillis did not immediately go "hands on" with Appellant. It was not until Appellant directly disobeyed the officer by turning to retreat into an unsecured building that Deputy

Gillis began applying force.  By this point, Appellant was not only "actively" resisting arrest by responding to the officers' directives with hostility, but he was also creating a threat to the officers' safety by moving into an unsecured building.

Even in this moment, Deputy Gillis tempered the use of force.  He initially put one hand on Appellant's left arm to stop Appellant.  When Appellant yanked his arm away, Gillis put both hands on Appellant to secure him in handcuffs.  As Appellant increased his resistance, Gillis, likewise, increased his level of force to secure Appellant.  Gillis grabbed Appellant from behind, turned Appellant towards the porch and leaned or pushed him against the porch railing.  These actions fail to demonstrate that Gillis or the other officers used excessive force.

This Court in *Buehler v. Dear* noted how officers taking a similar, measured approach in handling an arrestee did not violate the arrestee's Fourth Amendment rights.  *See Buehler*, 27 F.4th at 984–85 (citing *Cadena v. Ray*, 728 Fed. Appx. 293, 294–95 (5th Cir. 2018)).  Here, like in *Buehler*, "the Officers spoke calmly to [the suspect] for several minutes despite his attempt to interfere with his [friend's] arrest and his erratic behavior throughout the interaction." *Id.*  Furthermore, like Appellant, the arrestee disobeyed the officers' prior orders to move away from the area "where the[] events were taking place," that is, where the officers were attempting to conduct their investigation. *Id.*  Like the deputies here, the officers in *Buehler* provided the arrestee multiple warnings prior to using force, something this Court has noted can

justify a use of force. *See, e.g.*, *Buchanan v. Gulfport Police Dep't*, 530 Fed. Appx. 307, 313–14 (5th Cir. 2013) ("These multiple warnings and Buchanan's repeated failure to comply with police instructions would be enough to overcome Buchanan's claim of excessive force for the tasing."). Finally, like in Appellant's case, it was only after the arrestee disobeyed multiple directives that the officers began using force to enforce their directives. *Buehler*, 27 F.4th at 984–85. This Court upheld the officers' use of force in *Buehler* and should also do so here.

Also, once Appellant yanked his arm away from Gillis, the officers could have reasonably concluded that Appellant had committed the offense of resisting arrest. *See Ramirez*, 716 F.3d at 376 ("The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." (citing cases)) *quoted by Buehler*, 27 F.4th at 984–85). In similar cases, the Fifth Circuit has approved officers "taking down" a suspect. *See Cadena*, 728 Fed. Appx. at 296–97 (5th Cir. 2018) ("The Officers were justified in the 'take down' because . . . when [they] ordered [the suspect] to place his hands behind his back, [the suspect] instead backed away from [the officer]."); *see also Poole*, 691 F.3d at 629 ("[B]ecause Poole, upon refusing to turn around and be handcuffed, posed an immediate threat to the safety of the officers and actively resisted the officers' instructions, the use of force was not clearly excessive.") (internal alterations and quotations omitted), *cited by Cadena*, 728 Fed. Appx. at 296–97 (5th Cir. 2018).

Here the officers did not "take down" Appellant, but they sought to secure him in handcuffs by grabbing him from behind. The video recordings confirm that Appellant continued to physically resist the officers. The officers struggled with Appellant for a few moments before turning Appellant around and pushing or leaning him against the porch railing to secure him in handcuffs. As Appellant continued to resist, the officers later leaned Appellant against the hood of a car. Despite Appellant's continued and increasing physical resistance, not once did the officers resort to using a taser or any kind of weapon or strikes, nor did they take Appellant to the ground. The officers merely took additional steps to secure Appellant, place him in handcuffs, and move him away from the ongoing investigation. This is not excessive as a matter of law.

Appellant incorrectly argues that the extent of his injury demonstrates the unreasonableness of the force used. Standing alone, the extent of one's injury does not demonstrate that the force used was unreasonable. In some circumstances, even the use of deadly force can be reasonable. *See Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."). While Appellant's claimed injury may move the injury beyond "de minimis," this alone is insufficient to establish the unreasonableness of the force. This Court's focus is not on the injury but on the force used ***under the circumstances***.

*Byrd v. Cornelius*, 52 F.4th 265, 274 (5th Cir. 2022) ("Although a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible ***under the circumstances***." (emphasis added) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017))).   This inquiry does not change merely because Appellant claims the officers' use of force exacerbated a pre-existing injury.  As other courts have noted:

> We do not use hindsight to judge the acts of police officers; . . . . What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.

*Rodriguez v. Farrell*, 280 F.3d 1341, 1351–53 (11th Cir. 2002) (citing *Silverman v. Ballantine*, 694 F.2d 1091, 1096–97 (7th Cir. 1982)).  Based on the video recordings, the officers had no way of knowing about (or the extent of) Appellant's claimed pre-existing condition, or that their actions would result in the claimed injuries.  While Appellant's argument attempts to shift the inquiry to focus on his putative injuries, there is "only one inquiry . . . to determine whether an officer used excessive force in violation of the Fourth Amendment."  *Byrd*, 52 F.4th at 274 (internal quotations omitted).  As demonstrated above, that inquiry establishes the Appellees' use of force was reasonable as a matter of law.

Appellant's putative injury "evidence" was not even properly before the district court. Appellant attempted to prove medical causation for his injuries based on his lay testimony. Appellant's lay testimony is insufficient to distinguish whether his later back surgeries occurring some two years after the incident was due to the incident as opposed to his underlying and pre-existing conditions. In the context of pre-existing orthopedic injuries, establishing causation usually requires medical expert testimony. *See, e.g.*, *Wells v. Red Banner Transp., LLC*, No. SA-21-CV-00360-OLG, 2023 WL 438802, at *7 (W.D. Tex. Jan. 26, 2023) (finding medical expert required to distinguish orthopedic injuries sustained in first versus second accident) (citing, among others, *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) and *Guevara v. Ferrer*, 247 S.W.3d 662, 665–67 (Tex. 2007)), *report and recommendation adopted sub nom.*, 2023 WL 5322446 (W.D. Tex. Feb. 28, 2023). Here, Appellant's "evidence" conflicts with the paramedics' findings, as they noted Appellant sustained no emergent injury. *See, e.g.*, (ROA.106) (about 17:40 mark); (ROA.110) (about 18:00 mark). Appellant's "evidence" was objectionable and insufficient to show causation.

While Appellant concedes that the video recordings control the outcome of this case, he argues he was "free to walk away" from the officers, making their attempts to arrest him improper. The video recordings demonstrate Appellant was not free to leave. He was actively interfering with the officers' ongoing investigation

and questioning of a suspect. Appellant refused to obey multiple direct commands to step aside. He was not free to walk away, much less, to walk into an unsecured building where he could grab a weapon and endanger the officers. Appellant was under direct orders, which he refused to obey.

Appellant also mistakenly claims the district court "evaded its responsibility" by concluding Appellant "failed to present an argument in favor of his excessive use of force allegation." (Appellant's Br. 20). Regarding the excessive use of force claim, Appellant's principal argument to the district court was because the arrest was unlawful, any use of force was unreasonable and, therefore, excessive, relying on Louisiana law in support. (ROA.141-42) (citing *Deville v. Marcantel*, 567 F.3d 156, 173 n.9 (5th Cir. 2009)). The district court correctly rejected this argument. Appellees' arrest was lawful, and Louisiana law is inapplicable to Appellant's claims. (ROA.141); *see Deville*, 567 F.3d at 173 n.9 (noting unlike a battery claim asserted under Louisiana state law, "plaintiffs' federal excessive force claim does not depend on the constitutionality of the underlying arrest").

Appellant also incorrectly argues that the district court ignored the *Graham* factors. As the district court noted, however, it was Appellant who ignored the *Graham* factors in his response to Appellees' motion for summary judgment. (ROA.141n.34). Even so, the district court dismissed Appellant's claims based on the second prong of qualified immunity analysis. The district court noted that

Appellant failed to direct the district court to a case in his favor "other than to define the law at a high level of generality." (ROA.132&n.36) (citing *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018)). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann*, 884 F.3d at 310 (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)). "To satisfy prong two" Appellant's burden was to present "squarely governing precedent [that] had to place the excessiveness [of the actions at issue] beyond debate." *Estevis v. Cantu*, 134 F.4th 793, 797–99 (5th Cir. 2025) (citing cases). Appellant presented the district court with "nary a pre-existing or precedential case." *Vann*, 884 F.3d at 310. "That alone dooms his case here." *Id.* The district court did not "evade" its responsibility. It applied the law and correctly dismissed Appellant's excessive force claims. The Court should affirm the district court's judgment.

### III. The District Court Correctly Dismissed the Bystander Claims.

The district court correctly dismissed Appellant's bystander claims. (*See* ROA.142&n.38) (citing *Tennyson v. Villarreal*, 801 Fed. Appx. 295, 296 (5th Cir. 2020), *as revised* (Apr. 16, 2020) and *Griffin v. City of Sugarland, Tex.*, 787 Fed. Appx. 244, 245 (5th Cir. 2019)). Bystander and conspiracy claims are premised upon the commission of some underlying violation. *Tennyson*, 801 Fed. Appx. at 296 ("The Officers are therefore entitled to qualified immunity as to Tennyson's

excessive force claim.    And because the Officers are so entitled, Tennyson's conspiracy claim is not actionable."); *Griffin*, 787 Fed. Appx. at 245 ("Because his excessive force claim fails because there was no violation of his constitutional rights, Griffin's bystander liability theory also fails.").    Because Appellant's underlying wrongful arrest and excessive force claims fail, the bystander claims fail as well. The district court appropriately dismissed these claims.

## IV.    Appellant Abandoned His Remaining Claims.

Appellant abandoned his remaining claims.    Appellant complains that the district court found Appellant waived his cell phone claim.    (ROA.142-43).    As the district court noted, though, Appellant wholly failed to address his cell phone claims in his response to Appellees' motion for summary judgment.    (*See* ROA.112-21). Under this Court's precedent, "the party must press and not merely intimate the argument during the proceedings before the district court.    An argument must be raised to such a degree that the district court has an opportunity to rule on it."    *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013) (citation omitted) *quoted by Amalgamated Transit Union v. New Orleans Reg'l Transit Auth.*, No. 23-30113, 2023 WL 7013355, at *1 (5th Cir. Oct. 24, 2023).    This is because "[i]ssues raised in the complaint but ignored by the plaintiff in summary judgment proceedings to dismiss the complaint are waived and will not be considered on appeal."    *Taylor v. Collier*, No. 22-20398, 2023 WL 8184869, at *2

(5th Cir. Nov. 27, 2023) (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)).

"If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 n.14 (5th Cir. 2021) (internal quotations and citations omitted). The district court did not commit error by dismissing the cell phone claim.[1]

Appellant also abandoned his First Amendment retaliation claims because he failed to address this claim in his opening brief. (*See* ROA.140-41). "Generally, issues not raised in the appellant's opening brief are considered abandoned." *Akuna Matata Investments, Ltd. v. Tex. Nom Ltd. P'ship*, 814 F.3d 277, 282 n. 6 (5th Cir. 2016); *see also United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009) ("[A] party waives any argument that it fails to brief on appeal."). "This rule is applied regardless of whether the claims are intertwined or related." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 351 n.3 (5th Cir. 2016) (holding claims not discussed in opening brief may be dismissed regardless of their interrelation with other claims).

Given this Court's precedent, Appellant abandoned his cell phone and retaliation claims. This Court should affirm the district court's judgment.

---

[1] To the full extent necessary, Appellees incorporate by reference their arguments urging for a dismissal of the cell phone claims asserted in their motion for summary judgment as if stated herein fully. (ROA.92-93). This Court may affirm the district court's judgment on any ground apparent in the record. *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1449 (5th Cir. 1992).

## CONCLUSION

The Court should affirm the district court's judgment in its entirety.

Respectfully submitted,

/s/ R. Layne Rouse
R. Layne Rouse
Shafer, Davis, O'Leary & Stoker, PC
700 North Grant Street
Odessa, Texas 79760-1552
Tel: (432) 332-0893 Main
Fax: (432) 333-5002
Email: lrouse@shaferfirm.com

**Counsel for Defendants - Appellees**

# CERTIFICATE OF SERVICE

I certify that on June 16, 2025, the foregoing document was served as follows:

Counsel also certified that on June 16, 2025, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and 3) the document has been scanned with Bitdefender Endpoint Security version 7.7 2 228 and is free of viruses.

*/s/ R. Layne Rouse*

R. Layne Rouse

## CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements
And Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,368 words, including the footnote.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Windows, version 16 in Times New Roman font 14-point type face.

*/s/ R. Layne Rouse*
R. Layne Rouse

Dated: June 16, 2025